IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

REX and BARBARA DONAHUE
AND HURRICANE PLAZA, INC.,

                         Plaintiffs,

v.                                       CIVIL ACTION NO.   3:21-0095

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECIVER FOR THE FIRST STATE BANK,

                         Defendant.

**MEMORANDUM OPINION AND ORDER**

      Pending before the Court is a Motion for Dismissal of All Claims by the Federal
Deposit Insurance Corporation as Receiver (FDIC-Receiver) for The First State Bank. ECF No. 5.
Plaintiffs Rex and Barbara Donahue and Hurricane Plaza, Inc. oppose the motion. For the
following reasons, the motion is **GRANTED, in part,** with the remainder **HELD IN
ABEYANCE.**

**I.
FACTUAL AND
PROCEDURAL BACKGROUND**

      This action is the fourth and final action filed by Plaintiffs Rex and Barbara
Donahue in this Court to collect damages following the insolvency of The First State Bank.[1] It is
undisputed that the Donahues and their closely-held corporate entities, Hurricane Plaza, Inc. and
Sugarcreek, Inc., had a long-standing business and lending relationship with the now defunct bank.
On April 3, 2020, the FDIC was appointed as receiver for the bank, and it succeeded to the bank's

---

[1]*See Donahue v. FDIC*, Nos. 3:20-00875, 3:21-00042, and 3:21-00043.

interests and liabilities. *See* 12 U.S.C. § 1821(d)(2)(A), in part ("The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to--(i) all rights, titles, powers, and privileges of the insured depository institution"). Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), any claimants of a failed institution are required to file claims "before a certain date—the 'bar date.'" *Willner v. Dimon*, 849 F.3d 93, 102 (4th Cir. 2017) (quoting *Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n*, 94 F.3d 914, 919 (4th Cir. 1996); footnote omitted). The bar date for submitting claims against The First State Bank was July 22, 2020. *See* https://www.fdic.gov/resources/resolutions/bank-failures/failed-bank-list/fsb-wv.html.

As relevant to this case, Rex Donahue used a consultant[2] and timely filed a *pro se* claim with the FDIC-Receiver in the amount of $100,000.00 (Claim No. NS1053600224). In his claim letter, Mr. Donahue states that the deeds for certain properties, referred to as Apple Blossom Lots 38-41, were transferred from Hurricane Plaza, Inc. to another company known as Meadows Development, LLC. in May 2012. *Ltr. from Forrest Rex Donahue to FDIC-Receiver* (June 17, 2020), ECF No. 1-2, at 1. According to Mr. Donahue, the properties were unencumbered, and the bank told him that Hurricane Plaza, Inc. had received a payment for $100,000 and a payment for $25,000. However, following the transfer, Meadows Development, LLC decided it did not want the property because it was concerned about the legal difficulties of Jackie Cantley, a Vice President at the bank.[3] Therefore, Mr. Donahue had his counsel[4] arrange for the property to be

---

[2]The consultant was Kevin Mundstock of Wag-Mun LLC.

[3]Mr. Cantley pled guilty before this Court in 2014 to Misallocation of Bank Funds, in violation of 18 U.S.C. § 656. He was sentenced on September 15, 2014, to sixty months of incarceration. *See United States v. Cantley*, 3:13-cr-00245 (S.D. W. Va. 2013).

[4]Mr. Donahue was represented by different counsel at the time.

deeded back to Hurricane Plaza, Inc. in August 2012.[5] Mr. Donahue stated that a signed deed of trust was recorded at the county courthouse when ownership of the property was transferred back to Hurricane Plaza, Inc. Mr. Donahue also asserted he paid taxes on the property but, at some point, he learned that the bank had paid the taxes without his consent and had gained ownership of the property. In the letter, Mr. Donahue expressed his concern how the bank acquired the lots from him when he had "owned them free and clear." *Id.*

On December 8, 2020, the FDIC-Receiver disallowed the claim "as not proven to the satisfaction of the Receiver." *Notice of Disallowance of Claim*, Claim No. NS1053600224 (Dec. 8, 2020), Ex. 1 to the *Compl.*, ECF No. 1-1. After the Notice was issued, the Donahues retained counsel, who timely filed this action on their behalf for de novo review. *See* 12 U.S.C. § 1821(d)(6) (providing claimants have 60 days to file a lawsuit or the disallowance of the claim becomes final). Hurricane Plaza, Inc. was not named as a plaintiff. The FDIC-Receiver then moved to dismiss the action pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In support of the motion, the FDIC-Receiver generally argued the Donahues lack standing and their claims are vague, factually unsupported, and barred by the statute of limitations. The FDIC-Receiver also asserted the Complaint seeks remedies that are not available in an action against it.

In response, the Donahues stated they received untimely notice of the disallowance. As a result, their current counsel was unable to gather all the relevant documents and perform the

---

[5]The FDIC-Receiver attached the Deeds showing Hurricane Plaza, Inc. transferred the property to Meadows Development, LLC on May 7, 2012, and Meadows Development, LLC transferred the property back to Hurricane, Plaza, Inc. on August 31, 2012.

necessary research before filing the hastily drafted Complaint. To the extent the Court found the Complaint lacking, the Donahues' counsel specifically requested within the Complaint itself that he be given additional time to review documents and to file a more comprehensive amended version.

Upon consideration, the Court entered a Memorandum Opinion and Order on April 29, 2021, recognizing that the Donahues owned, operated, and solely controlled Hurricane Plaza, Inc., as a closely-held company. It appeared to the Court that the Donahues "had both a personal and business relationship with The First State Bank, and they were accustomed to personally conducting business with the bank on behalf of Hurricane Plaza, Inc. for many years." *Donahue v. FDIC for First State Bank*, 3:21-0095, 2021 WL 1702931, at *2 (S.D. W. Va. Apr. 29, 2021). The Court also found that, despite the inartful *pro se* administrative claim, the FDIC-Receiver easily identified Hurricane Plaza, Inc. as the involved entity. In his letter, Mr. Donahue explained how and why the deeds were transferred from and to Hurricane Plaza, Inc. and he also identified himself as the owner of the property and the owner of the company. Clearly, it is easy to recognize that he was using Hurricane Plaza, Inc. and himself interchangeably as the owners and claimants. However, the Court found the factual basis for the Donahues' claims in the Complaint were scant and the claims themselves were difficult to discern. Additionally, as previously mentioned, Hurricane Plaza, Inc. was not named as a plaintiff when the action was filed with this Court.

In light of the circumstances, the Court granted counsel's request to file an Amended Complaint and held the Motion to Dismiss in abeyance. However, given the FDIC-Receiver's arguments in its motion, the Court instructed the Donahues that "they must

specifically identify the transactions and any contracts underlying their claim so the appropriate statute of limitations can be determined." *Id*. The Court further stated they "should add as parties any corporate entities they believe are necessary parties." *Id.*

Thereafter, the Donahues filed an Amended Complaint which adds Hurricane Plaza, Inc. as a plaintiff, together with some other changes. The FDIC-Receiver then supplemented its Motion to Dismiss with additional grounds for dismissal. Plaintiffs responded, and the FDIC-Receiver replied. Thus, the issue is now ripe for determination.

## II.
## STANDARD OF REVIEW

Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986) (Murnaghan, C.J., concurring). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id*. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*. On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id*. (citations omitted). A dismissal only should be granted in

those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).

With regard to a motion under 12(b)(6), courts look for "plausibility" in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Supreme Court

-6-

continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)).

The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Additionally, when ruling on a motion to dismiss, this Court may consider documents attached to the complaint and a motion to dismiss, without converting the motion to one for summary judgment, provided the documents "are integral to the complaint and authentic." *Rockville Cars, LLC v. City of Rockville, Maryland*, 891 F.3d 141, 145 (4th Cir. 2018) (stating "[w]hile considering a 12(b)(6) motion, we may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic" (internal quotation marks and citations omitted)). It is under these principles that the Court must consider the FDIC-Receiver's motion.

## III.
## DISCUSSION

In its Supplement, the FDIC-Receiver argues that the Amended Complaint fails to materially develop the factual basis for Plaintiffs' claims and it must be dismissed for a variety of reasons. The FDIC-Receiver reiterates its challenge to the Donahues' standing to bring an action and argues that Hurricane Plaza, Inc. failed to exhaust the administrative process. Additionally, the FDIC-Receiver argues that, even if the Court finds Hurricane Plaza, Inc. did exhaust, its claims are barred because it did not timely seek judicial review.

Despite being given additional time to revise their Complaint, the Court finds Plaintiffs' have added little factual support, have not identified any specific contracts, and only make blanket conclusory claims of "breach of contract, breach of fiduciary duty, theft by deception, breach of covenant of fair dealing[,] . . . unjust enrichment[,] . . . . [and] estopp[el]." *Am. Compl.* at ¶7. They also appear to reallege a conversion claim (while not labeled as such), alleging that the bank failed to credit loan payments and improperly foreclosed on the property. *Id.* at ¶¶8, 11. Although not in the body of the Amended Complaint, Plaintiffs further summarily allege in their prayer for relief that they seek punitive damages against the FDIC-Receiver for violations of their "due process, equal protection, and other US Constitutional rights[.]" *Id.* at ¶c.

Before considering whether these claims can withstand the FDIC-Receiver's challenge under Rule 12(b)(6), the Court initially considers whether Hurricane Plaza, Inc. can proceed at all as a newly-named Plaintiff. The FDIC-Receiver argues that any claims of Hurricane Plaza, Inc. are barred because it did not join this action, or file any action seeking review of the disallowance, for 156 days, which was well beyond the 60 day statutory limit set forth in 12 U.S.C.

§ 1821(d)(6). Additionally, the FDIC-Receiver asserts there is no basis upon which Hurricane Plaza, Inc.'s claims can "relate back" to the date of the original filing and, therefore, its claims must be dismissed.

If the Court assumes, without deciding, that Hurricane Plaza, Inc. exhausted its administrative remedies by virtue of Mr. Donahue's administrative claim letter, Hurricane Plaza, Inc. clearly was named as a plaintiff in this action well beyond the statute of limitations for challenging the disallowance. In order for Hurricane Plaza, Inc. to avoid dismissal on statute of limitations grounds, it must show that its claims "relate back" to the timely-filed original Complaint. Although the FDIC-Receiver specifically raised this issue in its briefing, Plaintiffs completely fail to address it and make no argument whatsoever that Hurricane Plaza, Inc.'s claims relate back. Additionally, the Court notes that Plaintiffs did not substitute Hurricane Plaza, Inc. for the Donahues in the Amended Complaint, nor do they argue that they made an excusable mistake by naming the Donahues instead of Hurricane Plaza, Inc. *See* Fed. R. Civ. P. 15(c)(1)(C) (allowing relation back when there is a mistake of party). Rather, they maintain that the Donahues are proper Plaintiffs and have independent grounds to assert standing apart from Hurricane Plaza, Inc. Furthermore, the Court recognizes that, despite the Donahues' contention that their attorney lacked adequate time to research and prepare the original Complaint, the Complaint was timely filed and it was obvious upon filing that Hurricane Plaza, Inc. should have been named as a party as it was mentioned throughout Mr. Donahue's administrative claim letter. No amount of additional time to research and prepare was necessary on that front. Hurricane Plaza, Inc. easily could have, and should have, been included as a plaintiff when the original Complaint was filed.[6]

---

[6]Although Plaintiffs have not made any arguments with regard to Hurricane Plaza, Inc.'s

Thus, as Hurricane Plaza, Inc. did not timely seek judicial review and Plaintiffs do not argue the claims relates back, the Court **FINDS** any claims of Hurricane Plaza, Inc. are barred by the statutory time limits established in § 1821(d)(6). Therefore, the Court **DISMISSES** Hurricane Plaza, Inc. from this action.

Next, the Court considers whether the Donahues have standing. Standing is a constitutional requirement to guarantee federal courts do not go beyond their authority. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (citation omitted). The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citations omitted). Additionally, where a plaintiff is "the party invoking federal jurisdiction," it is the plaintiff who "bears the burden of establishing these elements." *Id.* (citation omitted). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975) (footnote omitted)). Without standing, this Court lacks jurisdiction, and the case must be dismissed. *California v. Texas*, 141 S. Ct. 2104, 2120 (2021) (directing case be dismissed where the plaintiffs failed to show they had standing).

For a plaintiff to establish an injury in fact, the plaintiff must present evidence "that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'

---

claims relating back, any suggestion they did not know that Hurricane Plaza, Inc. should have been named as a plaintiff when the original Complaint was filed would undermine their administrative exhaustion argument.

and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted in *Spokeo*)). A "particularized" injury "must affect the plaintiff in a personal and individual way." *Id.* (citation and internal quotation marks omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (citation omitted).

In responding to the FDIC-Receiver's renewed argument that the Donahues lack standing, Plaintiffs state: "The Donahues' [sic] have standing because they executed personal guarantees and because they receive income from Hurricane Plaza, and further because they are far more than merely shareholders. This is a closely held corporation." *Supp. Resp. to Def.'s Mem. of Law in Supp. of Mot. of FDIC-Receiver for Dismissal of all Claims*, at 4, ECF No. 13. Plaintiffs also state they are in "danger of the new banks who have purchased loans from First State Bank seeking collection of the same[.]" *Id.* at 5.

With respect to the Donahues' argument that they have standing as a sole shareholder of a closely-held company and for loss of income from the company, it is well established that West Virginia law presumes a corporation is a separate legal entity apart from its shareholders. Syl. Pt. 3, in part, *S. Elec. Supply Co. v. Raleigh Cty. Nat'l Bank,* 320 S.E.2d 515 (W. Va. 1984) ("The law presumes . . . that corporations are separate from their shareholders."). In *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342 (4th Cir. 2013), the Fourth Circuit explained that, when individuals elect to do business as a limited liability company (LLC) to protect their personal assets, those individuals become agents of the company, and they do not have "standing to claim damages to the LLC, even if they also suffered personal damages as a consequence." 716

F.3d at 347–48 (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006) (stating "it is fundamental corporation and agency law—indeed, it can be said to be the whole purpose of corporation and agency law—that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts"). Although this case involves a corporation as opposed to an LLC, the same rule applies. *See Smith Setzer & Sons, Inc. v. S.C. Procurement Rev. Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994) ("It is considered a 'fundamental rule' that '[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation.'" (citation omitted)). Therefore, the Court finds the fact the Donahues are sole shareholders of a closely-held company and may have lost income due to alleged wrongs perpetrated against Hurricane Plaza, Inc. is insufficient to confer Article III standing upon them to bring an action on behalf of the company.

The Donahues also argue that they have standing because they are the personal guarantors of Hurricane Plaza, Inc.'s loans and face the danger of collection efforts from other banks that have purchased those loans. Thus, they can demonstrate they personally have suffered an injury in fact. However, despite this argument in their briefing, Plaintiffs have not set forth any facts or support for this argument in their Amended Complaint. Instead, they only generally allege a breach of contract without identifying or discussing any specific contracts they are relying upon and there is no mention of any guarantee agreements.

In the Court's previous Memorandum Opinion and Order permitting them to file the Amended Complaint, the Court instructed the Donahues to "specifically identify the transactions and any contracts underlying their claim so the appropriate statute of limitations can

-12-

be determined." *Donahue*, 2021 WL 1702931, at *2. In their Supplemental Response, Plaintiffs argue that they were unable to comply with the Court's directive because the FDIC-Receiver has refused to provide them the relevant loan documents, necessitating discovery.[7] Setting aside whether Hurricane Plaza, Inc. and The First State Bank entered into signed, written contracts, the Court finds the Donahues should have in their possession and be able to identify and produce written contracts establishing that they personally guaranteed loans they believe have been or will be collected upon related to the sale, repurchase, and the bank's apparent foreclosure of Apple Blossom Lots 38-41.

As the Donahues' standing rests on this pillar to show they have suffered an injury in fact, the Court finds in the interest of justice under Rule 15(a)(2) of the Federal Rules of Civil Procedure that the Donahues may file a Second Amended Complaint to elucidate this claim. In doing so, the Court reminds the Donahues that it is their burden to "clearly . . . allege facts demonstrating each element" to establish they have standing. *Spokeo*, 578 U.S. at 338 (internal quotation marks and citations omitted). In other words, the Donahues cannot simply make a conclusory statement they were guarantors without any factual support. *See Twombly*, 550 U.S. at 555 (stating mere labels and conclusions are insufficient). Instead, they must specifically identify the written contracts upon which they rely showing they have suffered an injury in fact as guarantors, and they must include specific factual allegations about what the bank did or did not do that caused them damages and identify precisely what those damages are. To survive, the Donahues must establish both standing and a cognizable claim. Additionally, the Donahues must

---

[7]The FDIC-Receiver refutes this allegation and maintains Plaintiffs have not requested it produce any contracts. Moreover, the FDIC-Receiver states that any Deeds of Trust would be recorded as a public record and available to Plaintiffs without its assistance.

allege, with factual support, how the claim letter submitted to the FDIC-Receiver exhausted their claim as guarantors.

As Hurricane Plaza, Inc. has been dismissed from this action, the Donahues may not reassert any claims on its behalf in the Second Amended Complaint. Additionally, to the extent the Donahues assert claims of "due process, equal protection, and other US Constitutional rights" violations,[8] the Court **FINDS** these are mere conclusory statements and the Amended Complaint is completely devoid of any facts to support such claims. Therefore, the Court **DISMISSES** the constitutional claims pursuant to Rule 12(b)(6).

Finally, the FDIC-Receiver mentions in a footnote that the Donahues' claims may be barred by a settlement agreement and release entered in state court.[9] The FDIC-Receiver has not provided the Court with a copy of the settlement agreement and has not made any arguments beyond its suggestion in the footnote. Therefore, the Court finds the issue is not properly before it. However, if the FDIC-Receiver has evidence that the Donahues' claims are barred by virtue of a settlement agreement, it may make those arguments and submit that evidence to the Court.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS, in part,** the FDIC-Receiver's Motion for Dismissal of All Claims (ECF No. 5) and **DISMISSES** Hurricane Plaza, Inc. from this action and **DISMISSES** Plaintiffs' constitutional claims. The Court continues to **HOLD IN ABEYANCE** the remainder of the motion and shall permit the Donahues to file a

---

[8] *Am. Compl.* at ¶c.

[9] *FDIC-Receiver's Reply to Plaintiffs' Supp. Resp.*, at 6 n.1, ECF No. 16.

Second Amended Complaint to allege a plausible claim as guarantors. If the Donahues choose to file a Second Amended Complaint, the Court **DIRECTS** they do so **on or before February 8, 2022.** If a Second Amended Complaint is filed, the FDIC-Receiver shall have seven days to supplement its motion to dismiss, the Donahues shall have five days to respond, and the FDIC-Receiver shall have three days to file a reply.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        January 26, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE